IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERLEY L. CLAGG,

    Petitioner,

v.

JEFFREY A. WOLFE, Warden,

    Respondent.

CASE NO. 2:08-cv-144
JUDGE SARGUS
MAGISTRATE JUDGE ABEL

## OPINION AND ORDER

On April 6, 2009, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus be dismissed. Petitioner has filed objections to the Magistrate Judge's *Report and Recommendation*. For the reasons that follow, petitioner's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

Petitioner objects to the Magistrate Judge's recommendation of dismissal of his claims as procedurally defaulted. Petitioner again contends that his objection at sentencing properly preserved his claims for appellate review and argues that the state appellate court therefore erroneously reviewed his claims for plain error only such that this Court may review his claim on the merits. *See Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001):

> Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir.2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal.").

> Nevertheless, when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded.

*Id.* Alternatively, petitioner contends that the ineffective assistance of counsel constitutes cause for his procedural default. As noted by the Magistrate Judge, however, petitioner failed to present his claim of ineffective assistance of counsel to the state courts. Therefore, the ineffective assistance of counsel cannot constitute cause for his procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

Further, even assuming that petitioner properly preserved his claims for federal habeas corpus review by objecting to imposition of non-minimum consecutive sentences at his re-sentencing hearing, *see Objections*, at 4, the record does not reflect that federal habeas corpus relief is warranted.

Petitioner asserts that the trial court's imposition of a maximum term of ten years on aggravated arson, consecutive to a non-minimum term of eleven months on theft violated the Sixth Amendment, due process and the Ex Post Facto Clause, because in November 2003, when he committed these crimes, "there was a presumption" he would be sentenced to minimum concurrent sentences unless the judge made factual findings required under O.R.C. §2929.14(A)- (E), but at the time he was re-sentenced, after *State v. Foster*, 109 Ohio St.3d 1 (2006)(excising provisions of Ohio sentencing statutes as unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004)), the trial court no longer needed to make any such findings prior to imposing maximum, non-minimum or consecutive sentences. Accordingly, petitioner contends, he thus was substantially and

unconstitutionally disadvantaged by retroactive application of unanticipated sentencing changes. *See Traverse.* This Court is not persuaded by this argument.

The state appellate court rejected petitioner's claims as follows:

> Clagg contends that the trial court erred when it re-sentenced him to non-minimum, maximum, and consecutive prison terms. He claims that the court violated the Due Process and Ex Post Facto Clauses of our State and Federal Constitutions. The crux of Clagg's argument is that the sentencing statutes in effect at the time he committed his offenses created a presumption in favor of minimum, concurrent sentences for offenders who had not previously served a prison term, and that the *Foster* decision retroactively increased the presumptive sentences. Clagg admits that we have already decided this issue in *Grimes,* supra, but invites us to revisit our decision. In *Grimes,* we held that the *Foster* decision did not change the range of sentences.
>
> Clagg did not raise his due process and ex post facto arguments in the trial court. Thus, he has waived all but plain error.
>
> \*\*\*
>
> In *Foster* the Ohio Supreme Court considered the constitutionality of Ohio's sentencing statutes in light of the United States Supreme Court's holdings in *Blakely v. Washington* (2004), 542 U.S. 296 and *Apprendi v. New Jersey* (2000), 530 U.S. 466. The Court found that, under *Blakely* and *Apprendi,* R.C. 2929.14(B), R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment to the extent that they required judicial fact finding. *Foster,* supra, at paragraphs one through seven of the syllabus. In constructing a remedy, the *Foster* Court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. *Id.* The Court then held that the cases before the Court "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the Court's

3

opinion. *Id.* at ¶ 104. Consistent with the United States Supreme Court's holding in *United States v. Booker* (2005), 543 U.S. 220, the *Foster* Court only applied its holding retroactively to cases that were then pending on direct review or not yet final. *Foster* at ¶ 106.

In *State v. Grimes*, Washington App. No. 04CA17, 2006-Ohio-6360, this court considered and rejected a due process and ex post facto challenge to a sentence imposed in accordance with the Ohio Supreme Court's holding in *Foster*. There, we agreed with the observations of the Ninth and Second Districts, which rejected such challenges outright. In doing so, those courts expressed that it is unlikely that the Ohio Supreme Court would have directed lower level courts to violate the Constitution; and, in any event, the district courts of appeal are bound by Ohio Supreme Court directives. *Id.* at ¶ 8, citing *State v. Hildreth*, Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶ 10; *State v. Durbin*, Greene App. No.2005-CA-134, 2006-Ohio-5125, at ¶¶ 41-42.

In finding that the Ohio Supreme Court's remedy in *Foster* does not violate the Due Process or Ex Post Facto Clauses of the United States Constitution, we also expressed our approval of the reasoning set forth by the Third District in *State v. McGhee*, Shelby App. No. 17-06-05, 2006-Ohio-5162. *Grimes* at ¶ 9, citing with approval *McGhee* at ¶¶ 11 & 13-20. Because the range of prison terms for the defendant's offense remained the same both before and after *Foster*, we concluded that "it is difficult to understand how appellant could maintain that an enlargement of the criminal statute occurred, generally, or available punishments, in particular." *Id* at ¶ 10. Further, we noted that the appellant did not attempt to explain how he would have acted differently had he known that the Ohio Supreme Court would strike down parts of R.C. 2929.14. *Id.* Accordingly, we found that the court did not err in imposing the maximum sentence for the offense. *Id.* at ¶ 11.

Based upon our holding in *Grimes,* we find that the trial court did not err in imposing non-minimum, maximum, and consecutive sentences for Clagg's offenses. We do not accept Clagg's invitation to revisit these issues. Therefore, we do not find any error, let alone plain error.

*State v. Clagg*, 2007 WL 1052803 (Ohio App. 4th Dist. April 3, 2007).

Petitioner's habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. § 2254(e)(1), the findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a

5

> question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

The trial court re-sentenced petitioner on August 29, 2006, pursuant to a remand from the Ohio Supreme Court, and after *Foster*. Therefore, to the extent that petitioner contends that the trial court engaged in prohibited factual findings prior to imposition of sentence, this claim plainly lacks merit. As discussed, after *Foster*, the trial court no longer needed to make any factual findings under Ohio law prior to imposition of non-minimum consecutive sentences. *See State v. Foster, supra*, 109 Ohio St.3d at 497. The United States Supreme Court has held that the Sixth Amendment does not preclude judicial fact finding prior to imposition of consecutive sentences. *Oregon v. Ice*, – U.S. –, 129 S.Ct. 711, 714-15 (2009).

Additionally, this Court agrees with other courts to consider the issue which have rejected petitioner's argument that imposition of maximum, consecutive, or non-minimum terms of incarceration after *Foster* violates due process or the Ex Post Facto Clause. *See Trewartha v. Brunsman*, 2009 WL 614963 (S.D. Ohio March 5, 2009):

> This Court agrees with other courts to consider the issue which have rejected this same claim.

6

Article I, § 10 of the United States Constitution provides that no state shall pass ex post facto laws. U.S. Const, Art. I, § 10. The Constitution's bar against ex post facto laws, however, does not apply to courts:

The Ex Post Facto Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process ... would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decision making, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).

Although the Ex Post Facto Clause does not apply to courts, "limitations on ex post facto judicial decision making are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that courts may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The Supreme Court has explicitly declined to apply all the protections of the Ex Post Facto Clause to courts by way of the due process clause:

To the extent petitioner argues that the Due Process Clause incorporates the specific prohibitions of the Ex Post Facto Clause ... petitioner misreads *Bouie.* [N]owhere in the opinion did we go so far as to incorporate jot-for jot the specific categories of [protection in the Ex Post Facto Clause] into due process limitations on the retroactive application of judicial decisions.

7

Nor have any of our subsequent decisions addressing *Bouie*-type claims interpreted *Bouie* as extending so far. Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decision making not by reference to the ex post facto categories [of protection], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated.

Petitioner observes that the Due Process and Ex Post Facto Clauses safeguard common interests-in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws. While this is undoubtedly correct, petitioner is mistaken to suggest that these considerations compel extending the strictures of the Ex Post Facto Clause to the context of common law judging.... Moreover, "[given the divergent pulls of flexibility and precedent in our case law system," incorporation of the [categories of protection in the Ex Post Facto Clause] into due process limitations on judicial decision making would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system.

*Id.* at 458-461 (citations omitted).

The Supreme Court has never held that the retroactive application of a judicial reconstruction of a statute that results in the loss of a presumption of a minimum sentence within a sentencing range violates the Ex Post Facto Clause or the due process clause of the United States Constitution.

8

*Pints v. Warden*, 2008 WL 4758697 (N.D. Ohio October 29, 2008) (footnote omitted).

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

*Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. ... Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb.1, 2008) (unpublished); *see also Rogers*, 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit ex post facto judicial decision-making. *Rogers*, 532 U .S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of

9

> attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)); *see also United States v. Barton*, 455 F.3d 649, 654 (6th Cir.) ("when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied*, 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006).
>
> Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely*, *Booker*, and *Foster* did not change the elements necessary to convict petitioner ... and petitioner was aware of the potential penalties he faced ... [B]oth before and after *Foster*, petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties.
>
> *Hooks v. Sheets*, 2008 WL 4533693 (S.D. Ohio October 3, 2008); *see also Smith v. Wilson*, 2008 WL 4758696 (N.D. Ohio October 29, 2008) (same).

*Id.*

Pursuant to 28 U.S.C. §636(b), this Court has conducted a *de novo* review of the Magistrate Judge's *Report and Recommendation*. For the foregoing reasons, and for the reasons discussed in the Magistrate Judge's *Report and Recommendation*, petitioner's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

IT IS SO ORDERED.

                                            /s/    5-20-2009
                                        EDMUND A. SARGUS, JR.
                                        United States District Judge